IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ANTOINE JAMEL MARTIN, | ) |
| Petitioner, | ) |
| v. | ) 1:13CV403 |
| BRAD PERRITT, SUPERINTENDENT, | ) |
| Respondent. | ) |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 3.) Respondent has filed an Answer (Docket Entry 5) and Motion for Summary Judgment (Docket Entry 6). Petitioner has filed a Response. (Docket Entry 13.)

### Background

On May 10, 2004, Petitioner pled guilty to two counts of first degree murder and one count of attempted robbery with a dangerous weapon, in the Superior Court, Scotland County, in cases 01 CRS 50-51, 04 CRS 1266. (Docket Entry 3, §§ 1-6, Docket Entry 9, Exs. 1-2.) He was sentenced to two consecutive terms of life imprisonment without parole. (*Id.*) Petitioner did not appeal. On April 6, 2005, Petitioner filed a Motion for Appropriate Relief ("MAR") in Superior Court, Scotland County. (Docket Entry 11, Ex. 17.) On September 1, 2005, the MAR was denied. (*Id.* at Ex. 18.)

Meanwhile, Petitioner moved to rescind the MAR on May 11, 2005 to file a petition for writ of certiorari for a belated appeal in the North Carolina Court of Appeals. (Docket Entry 9, Ex. 3.) On May 18, 2005, the motion to rescind was denied. (*Id.* at Ex. 4.) On July 18, 2005, Petitioner filed a petition for writ of mandamus in the North Carolina Court of Appeals and it was denied on July 29, 2005. (Docket Entries 9 at Ex. 5 and 10 at 7.)

On January 24, 2013, Petitioner filed another MAR in Superior Court, Scotland County, which was denied on February 18, 2013. (Docket Entry 10 at Exs. 8-9.) Petitioner then filed a petition for writ of certiorari in the North Carolina Court of Appeals, which was denied on March 14, 2013. (*Id.* at Exs. 10-12.) On or about April 3, 2013, Petitioner filed a motion to amend and habeas corpus petition in the North Carolina Court of Appeals, which was denied on April 8, 2013. (Docket Entry 11 at Ex. 13; Docket Entry 3, Ex. 1 at 8.) On April 22, 2013, Petitioner also filed a petition for writ of certiorari, petition for a writ of habeas corpus, a MAR, a notice of appeal, and motion to amend his habeas corpus petition in the Supreme Court of North Carolina. (Docket Entry 3, Ex. 1 at 2-61.) The motion to amend was allowed on April 24, 2013, and all other motions and petitions were denied or dismissed that day. (*Id.* at 2-6.) Petitioner submitted the instant Petition on May 13, 2013; it was date stamped as filed on May 16, 2013. (Docket Entry 3.)

## Petitioner's Claims

Petitioner raises four claims: (1) that the state prosecutor withheld evidence from him regarding an informant who had a pending federal case, (2) that his warrant was defective, (3) that the murder indictment was defective because it did not mention the elements of premeditation and deliberation, and (4) that the state could not prosecute him for two

2

counts of first degree murder and attempted robbery with a dangerous weapon without a superseding indictment. (Docket Entry 2, §12.)

## Discussion

Although Respondent addresses Petitioner's substantive claims in its Brief (Docket Entry 8)[1] in support of its Motion for Summary Judgment (Docket Entry 6) it also requests dismissal on the ground that the Petition (Docket Entry 3) was filed[2] beyond the one-year limitation period imposed by 28 U.S.C. § 2244(d)(1). (Docket Entry 8 at 12-19.) In order to assess Respondent's limitation argument, which is a threshold issue, the Court first must determine when Petitioner's one-year period to file his § 2254 petition commenced. In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period *begins to run from* the latest of several potential starting dates:
>
> (A) *the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;*

---

[1] Given that the Petition is clearly time-barred, the undersigned sees no need to address Respondent's additional arguments as to why Petitioner's claims fail on the merits.

[2] "In [*Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379 (1988)], the Supreme Court held that a pro se prisoner's notice of appeal is filed on the date that it is submitted to prison officials for forwarding to the district court, rather than on the date that it is received by the clerk." *Morales–Rivera v. United States*, 184 F.3d 109, 110 (1st Cir. 1999). At least eight circuits "have applied th[is] prisoner mailbox rule to [establish the 'filing' date of] motions under 28 U.S.C. § 2254 or § 2255." *Id.* at 110–11 & n.3. In two published opinions issued since that consensus emerged, however, the United States Court of Appeals for the Fourth Circuit has declined to decide whether the prison mailbox rule applies in this context. *See Allen v. Mitchell*, 276 F.3d 183, 184 n.1 (4th Cir. 2001) ("Allen's petition was dated March 9, 2000, and it should arguably be treated as having been filed on that date. *Cf. United States v. Torres*, 211 F.3d 836, 837 n.3 (4th Cir. 2000) (declining to decide whether prison mailbox rule applies to filing of federal collateral review applications in district court). We take no position on that question here."); *but see Smith v. Woodard*, 57 F. App'x 167, 167 n.* (4th Cir. 2003) (implying that *Houston*'s rule governed filing date of § 2254 petition); *Ostrander v. Angelone*, 43 F. App'x 684, 684-85 (4th Cir. 2002) (same). Because the difference between the date Petitioner signed his Petition (*i.e.*, the earliest date he could have given it to prison officials for mailing) and the date the Clerk received it would not affect disposition of the timeliness issue, the Court need not consider this matter further.

3

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Green v. Johnson*, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added). The record does not reveal any basis for concluding that subparagraphs (B) and (C) of § 2244(d)(1) apply here.

Under subparagraph (A), Petitioner's one-year limitation period commenced on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The Court must therefore ascertain when direct review (or the time for seeking direct review) of Petitioner's underlying conviction(s) ended. Here, Petitioner pled guilty and judgment was entered on May 10, 2004. The time to file in this Court began fourteen days later on May 24, 2004 and, absent tolling, was to expire one year later in late May 2005. *See* 28 U.S.C. 2244(d)(1)(A) (providing that a conviction is final "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review"); *see also* N.C. R. App. P. 4(a)(2) (stating that criminal defendants have fourteen days to appeal).

However, prior to the expiration of the limitations period in late May 2005, Petitioner filed a post-conviction motion which tolled the limitations period. *Taylor v. Lee*, 186 F.3d 557, 561 (4th Cir. 1999) (concluding that state post-conviction proceedings generally toll the

4

federal habeas deadline for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)."). Specifically, Petitioner filed a MAR in state court—signed on April 4, 2005—on or about April 6, 2005, 317 days after the onset of the limitations period on May 24, 2004. The MAR was denied on September 1, 2005, whereupon the limitation period resumed and expired forty-eight days later on October 18, 2005. Petitioner filed the instant Petition at the earliest on May 13, 2013, consequently, it was filed over seven years too late. As explained above, Petitioner did file a number of additional post-conviction proceedings in state court. Petitioner, however, did not make any of these additional collateral filings in the state courts until 2013, well after his time to file a federal habeas claim had already expired. State filings made after the federal limitations period has passed do not restart or revive the filing period. *See Minter v. Beck*, 230 F.3d 663, 665 (4th Cir. 2000).

Petitioner asserts that he was prevented from discovering the factual predicate for one of his claims. (Docket Entry 3 at 5; Docket Entry 13 at 3-5[3].) Petitioner therefore references subparagraph (D), which provides that a Petitioner may file an application for a writ of habeas corpus within one year of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Petitioner "bears the burden of proving that he exercised due diligence" in order for the statute of limitations to run from the date he discovered the

---

[3] Page citations to this document refer to page numbers in the CM/ECF footer.

5

factual predicate of his claim. *DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006). As explained below, Petitioner fails to meet that burden.

More specifically, Petitioner essentially contends that pending federal charges against an informant should have been brought to his attention prior to his entry of a guilty plea. In this regard, it is best to turn directly to his Petition and let this claim speak for itself:

> [P]rosecutor Christy Newton failed to disclose and suppression of evidence of Jerry Lee Baker Federal case pending in court. The evidence was withheld from petitioner and his court appointed attorneys. Petitioner Attorney Richard W. Jackson filed a motion for discovery on August 8, 2001 to the prosecutor Kristy Newton requesting the information of Jerry Lee Baker. This habeas corpus petition contends from January 2001 to January 2003 he had been requesting the prosecutor Kristy Newton to disclose or suppress evidence of Jerry Lee Baker Federal pending case. Petitioner had no[t] excepted [sic] or pleaded guilty during period of January 2001 to January 2003. Petitioner had not at that time admitted he was guilty of two counts of first-degree murder and attempted robbery with a dangerous weapon. Petitioner had not waived his right to challenge his guilt of these offense[s] from January 2001 to 2003. Petitioner has been trying to obtain the information from the prosecutor Kristy Newton before he excepted [sic] the plea bargain on May 10, 2004 . . . .
>
> Jerry Lee Baker['s] intention was to help on the double homicide case in Scotland County to obtain favor from the prosecutor Kristy Newton who was prosecuting the double homicide case. The prosecutor was aware of Jerry Lee Baker's pending Federal case, because of "good faith." Jerry Lee Baker help[ed] the prosecutor on the double homicide case to obtain favoritism from her on his Federal case. Jerry Lee Baker was the prosecutor number 1 state witness including his friend Lonnie McRae, who also had charges pending in state court. Both of the witnesses together gave the Scotland County law enforcement agencies involved in the investigation of the double homicide the probable cause to arrest the petitioner . . . . The prosecutor wouldn't disclose Jerry Lee Baker's information about his Federal pending case, because the information would have jeopardized her case for a conviction. Petitioner had been

6

> trying for 4 ½ years from January 2001 to May 10, 2004 to obtain this information. This habeas corpus petitioner contends the Federal Constitution does apply in his case, and it require the prosecutors to disclose impeaching information relating to informants or other witnesses.

(Docket Entry 13 at 3-4.)

Petitioner asserts further that this was material, favorable evidence which could have been used to both impeach the informant and exculpate Petitioner, and which would likely have impacted the outcome of a trial. (*Id.* at 8-9.) Yet, Petitioner's claim is so vague as to render it conclusory in nature, impossible to assess in any meaningful way, and Petitioner has thus failed to meet his burden under subparagraph (D). *See, e.g., Norrid v. Quarterman*, No. 4:06–CV–403–A, 2006 WL 2970439, at *1 (N.D. Tex. Oct. 16, 2006) (unpublished) (concluding that petitioner bears burden of establishing applicability of section 2244(d)(1)(D), including his due diligence, and that conclusory statements do not satisfy burden); *Frazier v. Rogerson*, 248 F. Supp. 2d 825, 834 (N.D. Iowa 2003) (finding subparagraph (D) inapplicable where petitioner's "contention that he could not have discovered [factual predicate] sooner with due diligence is unsupported and conclusory").

For example, Petitioner does not state when he discovered the factual predicate of his claim, making it impossible to determine when the one year habeas deadline would commence under subparagraph (D). The undersigned has reviewed the record and the closest Petitioner comes to providing this information is in his 2013 MAR filed in Superior Court, which could perhaps be construed as contending that Petitioner discovered the factual predicate of his claim only "recently." (Docket Entry 10, Ex. 8 at 3.) ("It has been recently that the defendant obtained sufficient legal awareness and competent assistance to

7

Case 1:13-cv-00403-TDS-JLW   Document 14   Filed 10/29/13   Page 7 of 12

pinpoint the error in sentencing, during the plea trial irregularities and the grave injustices [illegible] his convictions and judgment."). However, in his 2013 state court MAR, Petitioner states further that he and his attorneys "did not know the prosecutor had withheld this information until after the day of trial" and that Petitioner's "private investigator Terry Gandy had turn[ed] in the report of Jerry Lee Baker" to his attorneys. (*Id.* at 4.) Petitioner therefore asserts that he knew of the factual predicate of his claim at some point between "after the day of trial" and "recently." What is puzzling about this claim is that Petitioner pled guilty and, therefore, did not exercise his right to trial. Petitioner could perhaps be referencing the alleged trial of the informant in question, or his own guilty plea, but this is not entirely clear. In any event, Petitioner has failed to meet his burden under subparagraph (D). *See, e.g., Grayson v. Grayson*, 185 F. Supp. 2d 747, 750–51 (E.D. Mich. 2002) (denying request for delayed commencement of federal habeas deadline where the petitioner "does not even indicate when he discovered the factual predicate of his claims, thus preventing this Court from determining when the one year limitations period would commence pursuant to § 2244(d)(1)(D)"); *Tate v. Pierson*, 177 F. Supp. 2d 792, 800 (N.D. Ill. 2001) (concluding that petitioner's conclusory allegations were insufficient to justify tolling under subparagraph 2244(d)(1)(D), where petitioner did not allege any facts to support when he learned of underlying facts), *aff'd*, 52 Fed. App'x 302 (7th Cir. 2002).

Additionally, Petitioner fails to explain why, if he was able to discover the factual predicate of his claim after the expiration of the federal habeas deadline, he was not able to do so before the deadline expired. The Petition (Docket Entry 3) and Response (Docket Entry 13) are silent on this issue. As explained, in his state court pleadings Petitioner asserts

that he was able to learn about the factual predicate of this claim after it was uncovered by a private detective. Again, however, Petitioner fails to explain why, if he could discover this information via a private detective "recently," he could not have exercised due diligence and discovered it within the one year limitations period set forth by federal law. Both federal charges and federal trials are generally matters of public record. *See Wade v. Robinson*, 327 F.3d 328, 333 (4th Cir. 2003) (holding that one-year period of limitation was triggered under subparagraph 2244(d)(1)(D) on the date inmate could have discovered factual predicate "through public sources"). However, Petitioner makes no claim, and there is no indication in the record, that he attempted but was unable to or prevented from finding out about the federal charges, or any subsequent trial, against the informant he references.[4] Subparagraph D does not delay the commencement of the limitations period until the date on which the factual predicate of a claim was *in fact* discovered; rather, it delays it only until the date on which it "*could have been discovered* through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(A) (emphasis added); *see, e.g., Freeman v. Zavaras*, 467 F. App'x 770, 775 (10th Cir. 2012) (refusing to apply subparagraph (D) where petitioner failed to explain why he could not have discovered the alleged *Brady* materials earlier); *Frazier*, 248 F. Supp. 2d at, 834 (rejecting delayed accrual claim where petitioner's "contention that he could not have discovered it sooner with due diligence is unsupported and conclusory"); *Grayson*, 185 F. Supp. 2d at 750-51 ("[P]etitioner does not specify how the factual predicate of his claims could not have been discovered earlier . . . ."); *Farabee v. Clarke*, No. 2:12–cv–76, 2013 WL

---

[4] In his Response, Petitioner contends that his defense counsel was ineffective for not failing to raise this issue previously. (Docket Entry 13 at 12.) Petitioner fails to support this conclusory assertion with meaningful factual allegations or proof, so it cannot provide the grounds for statutory tolling under subparagraph (D).

9

Case 1:13-cv-00403-TDS-JLW   Document 14   Filed 10/29/13   Page 9 of 12

1098098, at *3 (E.D. Va. Feb. 19, 2013) (unpublished) (finding subparagraph (D) inapplicable because "threadbare" allegations failed to explain inability to discover predicate earlier). Consequently, Petitioner has failed to allege facts or provide evidence sufficient to establish a delayed commencement under subparagraph (D).

Petitioner also makes a number of equitable tolling arguments in his Petition (Docket Entry 3, § 18) and Response (Docket Entry 13 at 29-32) to Respondent's Motion for Summary Judgment (Docket Entry 6). The doctrine of equitable tolling applies to the time bar set forth in Section 2244. *Holland v. Florida*, ___ U.S. ___, ___, 130 S.Ct. 2549, 2562 (2010). Equitable tolling may excuse an otherwise untimely filing when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807 (2005)). However, none of these arguments have merit.

First, Petitioner argues he is entitled to equitable tolling because his counsel (1) did not inform him that he could appeal, (2) did not file a notice of appeal, and (3) did not explain to Petitioner how he could perfect his own appeal. (Docket Entry 13 at 29.) Petitioner contends further, that equitable tolling is proper here because counsel provided him unspecified erroneous legal advice and refused to consult with him about his appellate rights upon request. (*Id.*) As an initial matter, ignorance of the law is not a basis for equitable tolling. *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004). Also, Petitioner was clearly aware of his appellate rights, including his right to file an appeal, because he sought a belated appeal with the North Carolina Court of Appeals in May 2005. Consequently, even if the federal habeas deadline was somehow statutorily tolled to account for these alleged

deficiencies of counsel until May 2005, and then ran until May 2006, Petitioner still waited seven more years before filing his Petition at the earliest on May 13, 2013. (Docket Entry 3.)

Second, Petitioner contends that failing to review his Petition (Docket Entry 2) on the merits would be a grave "miscarriage of justice." (Docket Entry 13 at 12-13.) This contention simply devolves into an argument that his claims have merit, which is generally irrelevant to the timeliness analysis. *See Rouse v. Lee*, 339 F.3d 238, 251-52 (4th Cir. 2003). Moreover, Petitioner cannot successfully argue that Respondent would suffer no prejudice if the limitations statute was tolled and that therefore his Petition (Docket Entry 3) should be deemed timely filed. Section 2244 does not require a showing of prejudice. Consequently, the issue of prejudice is irrelevant to this inquiry.

Third, Petitioner may also be implying that he is actually innocent of some of the crimes to which he pled guilty. (Docket Entry 13 at 19.) Recently, the Supreme Court recognized in *McQuiggin v. Perkins*, ___ U.S. ___, ___, 133 S.Ct. 1924, 1928 (2013), an actual innocence exception to AEDPA's time limitations. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see McQuiggin*, ___ U.S. at ___, 133 S.Ct. at 1935. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. Here, at most, Petitioner has done no more than assert in a conclusory fashion that he is innocent. Mere conclusory statements like this are insufficient to toll the federal habeas deadline. In the end,

11

Petitioner is not entitled to equitable tolling, his Petition (Docket Entry 3) was filed out of time and Respondent's Motion for Summary Judgment (Docket Entry 6) should be granted.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 6) be **GRANTED**, that the Petition (Docket Entry 3) be **DISMISSED**, and that Judgment be entered dismissing this action.

*[signature]*
Joe L. Webster
United States Magistrate Judge

October 29, 2013
Durham, North Carolina